## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROSA ARIAS,

      Plaintiff,

    v.

MARRIOTT INTERNATIONAL, INC.,

      Defendant.

Civil Action No. 15-1258 (CKK)

### MEMORANDUM OPINION
(March 31, 2019)

Plaintiff Rosa Arias moves to file a Third Amended Complaint in this lawsuit. Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Defendant opposes Plaintiff's Motion, arguing primarily that amendment would be futile. Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Amend. The Court concludes that some claims which Plaintiff requests to include in the Third Amended Complaint fail to state a claim for which relief may be granted. However, other claims are not futile and should be allowed to proceed.[2]

---

[1] The Court's consideration has focused on the following briefing:

- Pl.'s Mot. for Leave to File a Third Amended Complaint, ECF No. 93 ("Pl.'s Mot.");
- Pl.'s Notice of Filing Substitution of the Third Amended Complaint, ECF No. 96 ("Pl.'s Notice");
- Def.'s Opp'n to Pl.'s Mot. for leave to file a Third Amended Complaint, ECF No. 98 ("Def.'s Opp'n");
- Pl.'s Res. Opp'n to Def.'s Opp'n to Pl.'s Mot. for Leave to file a Third Amended Complaint, ECF No. 100 ("Pl.'s Reply").

The Court has considered the briefing and the record as a whole and determined in an exercise of its discretion that no hearing is necessary to resolve Plaintiff's motion. *See* D.D.C. LCvR 7(f).

[2] This case was assigned to Judge Gladys Kessler prior to her retirement. *See* Mem. Op., ECF No. 65, at 3 (anticipating Sept. 1, 2017, retirement). Nevertheless, for purposes of the present motion and in the interest of economy, the Court shall refer to Judge Kessler's prior actions in this case as those of the Court.

# I. BACKGROUND

Plaintiff is a Nicaraguan native whom Defendant employed in its Housekeeping Department from 2003 through October 6, 2017. In June 2015, Plaintiff filed a complaint against Defendant in the Superior Court of the District of Columbia, Civil Action No. 2015 CA 4324 B. [Corrected] Notice of Removal, ECF No. 2, at 1. On August 5, 2015, Defendant removed the case to the U.S. District Court for the District of Columbia on federal question jurisdictional grounds. *Id.* at 2-3. On April 21, 2016, Plaintiff filed a Second Amended Complaint with leave of the Court. Pl.'s 2d Am. Compl., ECF No. 31. Some ambiguity notwithstanding, the claims of the Second Amended Complaint may be summarized as follows: (1) discrimination based on race, national origin, and retaliation for a protected activity under 42 U.S.C. § 1981; (2) breach of contract in allegedly terminating Plaintiff's employment; (3) breach of implied covenant of good faith and fair dealing in allegedly terminating Plaintiff's employment in bad faith; (4) wrongful termination of at-will contract in violation of public policy and 42 U.S.C. § 1981, pled in the alternative to Counts Two and/or Three; (5) negligence and negligent misrepresentation of material facts, alleging that Defendant breached its duty of care through various employment actions relating to the chemicals used in the workplace; (6) aggravated assault through failure to provide personal protective equipment ("PPE"); and (7) fraudulent concealment of material fact concerning the health effects of chemicals used in the course of Plaintiff's employment.[3] *See id.*

On May 5, 2016, Defendant filed a Motion to Dismiss Plaintiff's Second Amended

---

[3] Plaintiff also apparently incorporated within Count Seven a claim of intentional misrepresentation of material fact, as well as what was styled as another Count Seven for violation of D.C. Code § 32-1103. In any event, Count Seven in all its aspects was later voluntarily dismissed. *See* Notice of Dismissal of Claims from Pl.'s 2d Am. Compl., ECF No. 40-1, at 1 (specifically referring to dismissal of fraudulent concealment and D.C. Code § 32-1103 counts); Order, ECF No. 52, at 2 (noting that "Plaintiff's Counts 5 and *both Counts 7* were previously voluntarily dismissed" (emphasis added)).

Complaint, ECF No. 33, which the parties subsequently briefed. On August 12, 2016, pursuant to an agreement between the parties, Plaintiff filed a notice voluntarily dismissing Count Five, containing the negligence and negligent misrepresentation claims, and Count Seven, containing, *inter alia*, the fraudulent concealment of material fact claim. Notice of Filing Def.'s Mot. for Sanction, ECF No. 40, at 1; Notice of Dismissal of Claims from Pl.'s 2nd Am. Compl. 1, ECF No. 40-1, at 1. On November 14, 2016, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. Order, ECF No. 52. The Court dismissed Count One's claims as to race and national origin discrimination, as well as Counts Four and Six in their entirety. *Id.* at 2; Mem. Op., ECF No. 53, at 6-7 n.6 ("Ms. Arias does not appear to be making an argument that she faced discrimination based on being from Nicragua [sic] separate and apart from discrimination based on race. Therefore, the Court will consider only the claim of discrimination based on race."). Remaining are Plaintiff's claims under Count One for retaliation in violation of 42 U.S.C. § 1981, Count Two for breach of contract, and Count Three for breach of implied covenant of good faith and fair dealing. *See* Nov. 14, 2015 Order, ECF No. 52, at 2.

On August 15, 2017, Plaintiff filed a Motion for Class Certification. ECF No. 69. However, on March 29, 2018, the Court denied Plaintiff's Motion for Class Certification. March 29, 2018 Memorandum Opinion, ECF No. 88.

On May 1, 2018, Plaintiff filed for leave to file a Third Amended Complaint. Pl.'s Mot., ECF No. 93. Prior to Defendant filing a response, Plaintiff filed a Notice requesting that the Clerk of the Court strike the Third Amended Complaint which was attached to Plaintiff's Motion and instead file the Third Amended Complaint attached to Plaintiff's Notice. Pl.'s Notice, ECF No. 96. The Third Amended Complaint which was attached to Plaintiff's Notice is the document that Defendant responded to and is the document currently being considered by the Court. Third

Amended Complaint ("TAC"), ECF No. 96-1. Defendant has opposed Plaintiff's Motion to Amend.

## II. LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litigation*, 629 F. 3d 213, 215 (D.C. Cir. 2010). As a result, a court's decision as to whether to grant or deny on futility grounds a motion to amend "is for practical purposes, identical to review of a 12(b)(6) dismissal based on the allegation in the amended complaint." *Id.* at 215-16.

## III. DISCUSSION

Following the Court's ruling on Defendant's motion to dismiss Plaintiff's Second Amended Complaint, three of Plaintiff's claims survived, each relating to Plaintiff's May 14, 2015 termination: [4] (1) 42 U.S.C. § 1981 claim for retaliation, (2) breach of contract, and (3) breach of implied covenant of good faith and fair dealing. *See* March 29, 2018 Memorandum

---

[4] The parties dispute whether or not the May 14, 2015 incident resulted in a termination or in an unpaid leave of absence. The Court need not decide that issue for purposes of resolving Plaintiff's Motion to Amend. But, for ease of reference, the Court will refer to the May 14, 2015 event as a termination.

Opinion, ECF No. 88, 5-6. In her Third Amended Complaint, Plaintiff preserves her previous three claims, and brings at least nine new claims. Under Plaintiff's requested Third Amended Complaint, she brings claims for:

- Count 1- Race discrimination and retaliation under the District of Columbia Human Rights Act ("DCHRA") for Plaintiff's May 14, 2015 termination;
- Count 2- Race discrimination and retaliation under 42 U.S.C. § 1981 for Plaintiff's May 14, 2015 termination;
- Count 3- Breach of contract for Plaintiff's May 14, 2015 termination;
- Count 4- Breach of implied covenant of good faith and fair dealing for Plaintiff's May 14, 2015 termination;
- Count 5- Negligent termination for Plaintiff's May 14, 2015 termination;
- Count 6- Race discrimination and retaliation under the DCHRA for Plaintiff's October 6, 2017 termination;
- Count 7- Race discrimination and retaliation under 42 U.S.C. § 1981 for Plaintiff's October 6, 2017 termination;
- Count 8- Hostile work environment under Title VII;
- Count 9- Breach of contract for Plaintiff's October 6, 2017 termination;
- Count 10- Breach of implied covenant of good faith and fair dealing for Plaintiff's October 6, 2017 termination;
- Count 11- Intentional infliction of emotional distress; and
- Count 12- Violation of overtime pay requirements under the Fair Labor Standards Act ("FLSA").

*See generally* TAC, ECF No. 96-1.

In response to Plaintiff's request to again amend her complaint, Defendant argues that permitting Plaintiff to amend her Complaint will result in undue delay. The Court understands Defendant's frustration given that this suit has been pending for almost three years and that this will be Plaintiff's third time amending her Complaint. However, under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Firestone*, 76 F.3d at 1208. Under these circumstances, the Court concludes that Plaintiff should be given the opportunity to fully present her claims. However, the Court cautions Plaintiff that, following the current requested amendment to

Plaintiff's Complaint, this case needs to proceed through the next stages of litigation. Absent extenuating circumstances, Plaintiff is unlikely to be granted a fifth bite at the apple.

In addition to arguing undue delay, Defendant also presents seven reasons as to why Plaintiff's Motion to Amend is futile. First, Defendant argues that Plaintiff's claims for race discrimination are futile because Plaintiff cannot establish a plausible basis for each element of the claims. Second, Defendant argues that Plaintiff's claims for retaliation resulting in her October 2017 termination are futile because Plaintiff fails to establish a causal connection between any protected activity and Plaintiff's termination. Third, Defendant contends that Plaintiff's hostile work environment claim is futile as she fails to meet the basic pleading requirements. Fourth, Defendant argues that Plaintiff's contract claims are futile because Plaintiff was an at-will employee. Fifth, Defendant contends that Plaintiff's tort claims are futile because they are preempted by Workers' Compensation exclusivity. Sixth, Defendant argues that Plaintiff's intentional infliction of emotional distress claim is futile because it is subsumed by her discrimination and retaliation claims. Finally, Defendant contends that Plaintiff's overtime wage claim is futile because her allegations lack specificity. The Court will address each argument in turn.

## A. Futility of Race Discrimination Claims

First, Defendant argues that Plaintiff's discrimination claims must fail under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff cannot establish a plausible basis for each of the elements. To establish a claim for discrimination under the DCHRA and Section 1981, a plaintiff must show that (1) she belongs to a protected class, (2) she suffered an adverse employment action, and (3) the adverse employment action gives rise to an inference of discrimination. *Ginger v. District of Columbia*, 477 F. Supp. 2d 41, 47-4, 56 (D.D.C. 2007) (setting out the standard for

discrimination under § 1981 and the DCHRA). The parties do not dispute that Plaintiff is a member of a protected class as she is Hispanic. Additionally, the Court concludes that Plaintiff has sufficiently plead at least two adverse employment actions as Plaintiff bases her claims of discrimination on her terminations in May 2015 and October 2017. Termination constitutes an adverse employment action. *See Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009) (explaining that termination is an "obvious" adverse employment action); *see also* Memorandum Opinion, ECF No. 53, 8.

Having considered the first two elements, the Court next turns to whether or not Plaintiff has pled facts which would give rise to an inference that discrimination led to her alleged adverse employment actions. In her Third Amended Complaint, Plaintiff generally alleges that she was terminated both in May 2015 and in October 2017 on account of race. TAC, ECF No. 96-1, ¶¶ 262, 281, 322, 327, 334. Plaintiff also provides several specific examples of this alleged racial discrimination. Plaintiff claims that Hope Boyd, a Marriott Assistant Manager, demanded that Plaintiff not speak Spanish in the workplace and told Plaintiff that Spanish employees talked too much. *Id.* at ¶ 55. Plaintiff also claims that Ms. Boyd told Plaintiff that Spanish employees complained too much about the conditions of their employment. *Id.* at ¶ 148. Plaintiff further alleges that her manager, Courtney Baron, told her that "[y]ou people can find these kinds of jobs at another Hotel." *Id.* at ¶ 260. Plaintiff goes on to connect Ms. Boyd and Ms. Baron to some of the decisions and warnings that ultimately resulted in Plaintiff's October 2017 termination. *See e.g., Id.* at ¶¶ 188, 206, 132.

Accordingly, the Court concludes that Plaintiff has pled sufficient facts to make her claims for racial discrimination resulting in her October 2017 termination non-futile. Based on this

analysis, Counts 6 and 7 are not futile and Plaintiff's Motion to Amend is **GRANTED** insofar as these counts rely on racial discrimination resulting in Plaintiff's October 2017 termination.

However, Plaintiff fails to in any way connect racial discrimination with her May 2015 termination. As the Court previously explained when it dismissed racial discrimination claims from her Second Amended Complaint, Plaintiff "does not attempt to connect the employer's racial discrimination" to her May 2015 termination. Nov. 14, 2016 Memorandum Opinion, ECF No. 53, 9. Plaintiff's Third Amended Complaint fails to cure this omission. While Plaintiff makes the conclusory statement that she was terminated in May 2015 on account of race, she makes no specific allegations that would allow the Court to infer that Plaintiff's May 2015 termination was on account of race. *See Edwards v. Gray*, 7 F. Supp. 3d 111, 116 (D.D.C. 2013) (explaining that, to survive a motion to dismiss, a plaintiff must allege racial discrimination and "support[] that allegation with sufficient factual detail to state a *plausible* claim"). Accordingly, the Court concludes that Counts 1 and 2 of Plaintiff's third amended complaint are futile and amendment is **DENIED,** insofar as these claims rely on racial discrimination.

## B. Futility of Retaliation Claims

Second, Defendant argues that Plaintiff's claims for retaliation resulting in her May 2015 and October 2017 terminations are futile because Plaintiff fails to establish a causal connection between any protected activity and Plaintiff's terminations. An employee establishes a prima facie case of retaliation by alleging that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Carney v. Am. Univ.*, 151 F.3d 1090, 1094-95 (D.C. Cir. 1998) (explaining the retaliation standard under § 1981 and the DCHRA). The Court finds that Plaintiff's claim for retaliation resulting in her May 2015 termination is not futile. The Court previously

refused to dismiss Plaintiff's § 1981 retaliation claim, finding that Plaintiff had adequately pled a causal connection between her deposition regarding Marriott's unhealthy working conditions and her May 2015 termination, which occurred only 44 days later. Nov. 14, 2016 Memorandum Opinion, ECF No. 53, 10 (citing *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014) (explaining that "mere temporal proximity may establish causation")). For these same reasons, the Court concludes that Plaintiff's DCHRA retaliation claim for her May 2015 termination is not futile. *See Carney*, 151 F.3d at 1094-95 (explaining that DCHRA claims for retaliation are treated similarly to § 1981 claims). Accordingly, Count 1 is not futile, and Plaintiff's Motion to Amend is **GRANTED** insofar as this count relies on retaliation resulting in Plaintiff's May 2015 termination.

Defendant further claims that Plaintiff fails to plead a causal connection between her October 2017 termination and any protected activity. But, when Plaintiff was terminated in October 2017, Plaintiff's current lawsuit against Defendant, clearly a protected activity, was pending. *See* [Corrected] Notice of Removal, ECF No. 2, at 1 (showing Plaintiff's lawsuit was filed in June 2015). A causal connection can be established by temporal proximity; and, here, the Court concludes that the contemporaneous relationship between Plaintiff's current lawsuit and her termination is sufficient to establish a non-futile causal connection. Based on this analysis, the Court concludes that Counts 6 and 7 are not futile, and Plaintiff's Motion to Amend is **GRANTED** insofar as these counts rely on retaliation resulting in Plaintiff's October 2017 termination.

### C. Futility of Hostile Work Environment Claim

Third, Defendant argues that Plaintiff's hostile work environment claim is futile as she fails to meet the basic pleading requirements. To state a claim for a hostile work environment, a plaintiff must allege that the conditions of her workplace were "so objectively offensive as to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81

(1998) (internal quotation marks omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* (internal quotation marks omitted). Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

Plaintiff alleges that she faced a hostile work environment based on disparate, negative, and harassing treatment. Plaintiff provides specific examples of such treatment like the racially-charged comments made by Ms. Boyd and Ms. Baron, repeated threats of termination, allegedly false disciplinary warnings, repeatedly being summoned to Ms. Baron's office to be yelled at, being made to clean rooms which were not assigned to her and which were far apart, a reduction in hours, and being regularly followed while at work. Plaintiff contends that the conditions at her work were so intolerable that it "caused Plaintiff to suffer panic attacks, daily nervousness, extreme anxiety, physical and mental pain and suffering and extreme emotional distress, compounded by economic loss." TAC, ECF No. 96-1, ¶ 9.

Because Plaintiff has alleged some conduct in support of her claim, the facts in Plaintiff's Third Amended Complaint "support her hostile work environment claim." *See Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying the defendant's motion to dismiss the plaintiff's hostile work environment claim because the plaintiff had alleged some conduct in support of her claim in addition to alleging overall negative treatment in the workplace). Courts in this Circuit have previously stated that "'a motion to dismiss is not the appropriate vehicle for evaluating the character or consequences of the acts alleged to create a hostile work environment.'"

*Terveer v. Billington*, 34 F. Supp. 3d 100, 121 (D.D.C. 2014) (quoting *Perry v. Snowbarger*, 590 F. Supp. 2d 90, 92 (D.D.C. 2008)). If a motion to dismiss is not an appropriate vehicle to evaluate the character or consequences of a hostile work environment claim, the Court finds that a motion to amend is an even less appropriate vehicle. Accordingly, the Court concludes that Plaintiff's hostile work environment claim is not futile and **GRANTS** Plaintiff's Motion to Amend to include Count 8, insofar as that count is a Title VII hostile work environment claim.

### D. Futility of Contract Claims

Fourth, Defendant argues that Plaintiff's contract claims are futile because Plaintiff was an at-will employee. Under District of Columbia law, "'[t]here is a presumption that a hiring not accompanied by an expression of a specific term of duration creates an employment relationship terminable at will by either party at any time.'" *Perkins v. Dist. Gov't Emps. Fed. Credit Union*, 653 A.2d 842, 842 (D.C.1995) (quoting *Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 816 (D.C.1991)). "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991). Accordingly, if a plaintiff does not "plead facts that would show that both parties intended to alter the presumption of at-will employment, [s]he has no remedy in contract law for h[er] termination." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 70 (D.D.C. 2005). In order to overcome the presumption of at-will employment, parties can "provide evidence that they intended to contract for a fixed period of employment," or they "can provide evidence that the agreed-upon employment can only be terminated upon specific preconditions." *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 48 (D.D.C. 2012).

Here, Plaintiff presents no evidence that the parties intended to contract for a fixed period of employment. Instead, Plaintiff contends that she "was a contract employee with Marriott under the protection of the employee Handbook that afforded her employment rights to be terminated only for cause, after three disciplinary written warnings." TAC, ECF No. 96-1, ¶ 288. Because Plaintiff incorporated by reference the Employee Handbook into her Third Amended Complaint, the Court can consider the Employee Handbook at this stage in the litigation. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (explaining that a court may consider on a motion to dismiss "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint").

Plaintiff contends that the Employee Handbook created a contractual relationship because it contained a progressive disciplinary plan which was ordinarily followed before employees were terminated. While an employee handbook with preconditions for termination has the potential to create a contractual relationship, here, no contractual relationship was formed because Defendant "effectively disclaim[ed] any implied contractual obligations arising from such provisions." *Strass v. Kaiser Found. Health Plan of Mid-Atl.*, 744 A.2d 1000, 1011 (D.C. 2000). Plaintiff's Employee Handbook expressly stated that "[t]he contents of this handbook do not create or constitute a contract, expressed or implied, between Marriott International, Inc. or its subsidiaries and you. Your employment is at-will. The Company reserves the right to modify, change, disregard, suspend or cancel at any time, without written or verbal notice, all or part of the handbook's contents as circumstances may require." Exhibit A, ECF No. 98-1, 5. The Court finds that no employee who reads the Employee Handbooks' explicit disclaimer could reasonably conclude that he or she is anything but an at-will employee. *See Howard v. Fed's Express Corp.*, 280 F. Supp.

3d 26, 29-31 (finding that no contractual relationship was formed based on preconditions for termination when the defendant disclaimed any contractual obligations).

Moreover, the progressive discipline section of the Employee Handbook on which Plaintiff relies states only that "*[i]n general*, you will be made aware of the concerns and given the opportunity to correct the situation or improve your level of performance to a satisfactory level." Exhibit 1, ECF No. 93-3, 2 (emphasis added). This statement, relied upon by Plaintiff, demonstrates that while Defendant will generally follow the progressive discipline model, Defendant is not contractually bound to do so. And, read in conjunction with the disclaimer at the beginning of the handbook, effectively discounts any implied contractual relationship.

Accordingly, the Court concludes that Plaintiff has not overcome the presumption that she was an at-will employee. Because Plaintiff was an at-will employee, Defendant did not breach any contract by terminating Plaintiff. The Court finds that Count 9 in the Third Amended Complaint is futile and **DENIES** leave to amend. The Court further **DISMISSES** Count 3 in Plaintiff's Third Amended Complaint. The Court recognizes that this count previously withstood Defendant's motion to dismiss Plaintiff's Second Amended Complaint. Nov. 14, 2016 Memorandum Opinion, ECF No. 53, 11-13. However, at that time, the Court was relying solely on Plaintiff's allegations that she was a contract employee, as the Employee Handbook had not been provided to the Court. *Id.* Considering now the Employee Handbook, the Court no longer needs to rely on Plaintiff's bare allegations, and concludes that Plaintiff was, at all relevant times, an at-will employee. As such, Plaintiff cannot state a claim for breach of contract arising from her May 2015 termination.

Additionally, based on this same reasoning, the Court concludes that Plaintiff's Count 10 claim for the breach of the implied covenant of good faith and fair dealing is also futile. A claim for the breach of the implied covenant of good faith and fair dealing "cannot exist in the absence

of a contractual relationship." *Busby v. Capitol One, N.A.*, 772 F. Supp. 2d 268, 284 (D.D.C. 2011).

Lacking any contractual obligation, there was also no corresponding implied covenant of good

faith and fair dealing which Defendant could breach. Accordingly, the Court finds Count 10 futile

and **DENIES** leave to amend. The Court also **DISMISSES** Count 4 in Plaintiff's Third Amended

Complaint for the same reasons.

### E. Futility of Tort Claims

Fifth, Defendant contends that Plaintiff's tort claims, alleging injuries due to cleaning

supplies, are futile because they are preempted by Workers' Compensation exclusivity. Defendant

argues that Plaintiff's Count 5 claim for negligent termination is futile because it is subject to the

exclusive remedies of the District of Columbia's Workers' Compensation Act ("WCA").

Defendant also argues that Plaintiff's Count 11 claim for intentional infliction of emotional distress

is subject to the WCA insofar as it relies on emotional distress stemming from the alleged harms

Plaintiff suffered because of the cleaning supplies she used.

The WCA has broad coverage over all "accidental injury or death arising out of and in the

course of employment." D.C. Code § 32-1501(12). If a claim is covered by the WCA, the WCA

provides the exclusive remedy available to employees for that claim. D.C. Code § 32-1504(a). The

WCA is interpreted broadly to apply to almost all common law tort claims resulting from

workplace injuries. *Doe v. U.S.*, 797 F. Supp. 2d 78, 82-83 (D.D.C. 2011); *see also Myco, Inc. v.

Super Concrete Co.*, 565 A.2d 293, 298 (D.C. 1989) ("under the exclusivity provision of the Act

the employer cannot be liable in tort to [an] employee for [an] injury"); *Vanzant v. Wash. Metro.

Area Transit Auth.*, 557 F. Supp. 2d 113, 117 (D.D.C. 2008) ("The WCA is the exclusive remedy

for a workplace injury."). Courts in this Circuit and in the District of Columbia have previously

determined that claims for negligence and for intentional infliction of emotional distress are

covered by the WCA. *See, e.g., Doe*, 797 F. Supp. 2d at 82 (explaining that the WCA "preempts an employee's suit against an employer for common law tort claims arising during the course and scope of employment"); *see also Lockhart v. Coastal Intern., Sec., Inc.*, 905 F. Supp. 2d 105, 117 (D.D.C. 2012) (explaining that common law claims for negligence are barred by the WCA); *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 631 (D.C.1995) (stating that "the trial court ordinarily will not have jurisdiction over an emotional distress claim based on the acts of a supervisor or co-worker"); *Carson v. Sim*, 778 F. Supp. 2d 85, 96 (D.D.C. 2011) (finding that the plaintiff's claim for intentional infliction of emotional distress was covered by WCA).

There is an exception to WCA coverage for injuries that are "specifically intended by the employer to be inflicted on the particular employee who is injured." *Grillo v Nat'l Bank of Wash.*, 540 A.2d 743, 744 (D.C. 1988). But, this exception is narrow and specific intent "will not be found even where an employer has knowledge to a 'substantial certainty' that an injury will result from an act." *Doe*, 797 F. Supp. 2d at 83-84. Importantly, "only actions by an individual 'who is realistically the alter ego of the corporation and not merely a foreman, supervisor or manager' can be treated as the intentional acts of the employer itself." *Hamilton v. Sanofi-Aventis U.S., Inc.*, 628 F. Supp. 2d 59, 63 (D.D.C. 2009) (quoting *Rustin v. District of Columbia*, 491 A.2d 496, 501 (D.C. 1985)). Plaintiff alleges no intentional action taken by anyone who could be considered an alter ego of the corporation itself. The Court finds that there is no ground to conclude that Defendant had the specific intent to injure Plaintiff. *See Lockhart*, 905 F. Supp. 2d at 119-20 (explaining that it is the employee's burden to prove that the WCA does not preempt a tort claim). Plaintiff seems to acknowledge that she does not fit within this narrow exception, stating that she "does not seek the *Grillo's* exception." Pl.'s Reply, ECF No. 100, 5. While it is not clear, Plaintiff's statement appears to apply to both Counts 5 and 11 of the Third Amended Complaint. *Id.*

Accordingly, Plaintiff provides no grounds for concluding that counts 5 and 11 can properly be brought outside of the WCA. As such, the Court concludes that these counts fall under the exclusivity of WCA and are futile.[5]

Even if Plaintiff's Count 5 claim for wrongful termination did not fall under the WCA, the Court would still conclude that Plaintiff's claim for wrongful termination is futile. Plaintiff alleges that "Defendant owed Plaintiff a duty of reasonable care to terminate Plaintiff's employment only for cause in accordance with the provisions of the [Employee Handbook]." TAC, ECF No. 96-1, ¶ 308. But, as has already been explained, Plaintiff was an at-will employee. And, as District of Columbia courts regularly hold, an "employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams*, 597 A.2d at 30. District of Columbia courts recognize only a narrow exception to this rule, finding that "an employer engages in tortious conduct when it fires an at-will employee for that employee's refusal to break the law at the employer's direction." *Id.*

Plaintiff makes no claim that this narrow exception applies to her. Instead, she claims that Defendant engaged in tortious conduct by firing her without following the usual progressive discipline model outlined in the Employee Handbook. But, because Plaintiff was an at-will employee, Defendant had no "duty of reasonable care to terminate Plaintiff's employment only for cause" in accordance with the progressive discipline model. TAC, ECF No. 96-1, ¶ 308. Instead,

---

[5] The court notes that when a claim may be covered by the WCA, courts can stay the proceeding in order to allow the plaintiff time to submit the claim to the DOES, the administrative agency charged with implementing the statute. *See Howard v. Fed'l Express Corp.*, 280 F. Supp. 3d 26, 34 (D.D.C. 2017); *Joyner v. Sibley Mem'l Hosp.*, 826 A.2d 362, 374-75 n.14 (D.C. 2003). But, here, the Court is not dismissing Plaintiff's claims, instead the Court is denying leave to amend. Additionally, Plaintiff explicitly states that "[s]uch a referral is inappropriate here." Pl.'s Reply, ECF No. 100, 5.

Plaintiff could be fired at any time, for any reason. *Adams*, 597 A.2d at 30. Accordingly, Plaintiff fails to state a claim for negligent termination.

The Court **DENIES** for reasons of futility Plaintiff's Motion to Amend as to Count 5, insofar as that count relies on emotional distress stemming from the alleged physical harms Plaintiff suffered because of the cleaning supplies she used, as that count falls under the jurisdiction of the WCA. The Court also **DENIES** Plaintiff's Motion to Amend Count 11 as that count is futile because it is governed by the WCA and fails to state a claim for which relief may be granted.

### F. Futility of Intentional Infliction of Emotion Distress Claim

Sixth, Defendant also argues that the remainder of Plaintiff's Count 11 claim of intentional infliction of emotional distress claim is futile, insofar as the remainder of that claim relies on her termination and other alleged acts of discrimination. In order to state a claim for the intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (internal quotation marks omitted). Extreme and outrageous conduct is defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted). In order to survive a motion to dismiss, "the allegations of the complaint must afford a basis for concluding that [the plaintiff] may be able to prove conduct of the required enormity." *Morton v. District of Columbia Hous. Auth.*, 720 F. Supp. 2d 1, 9 (D.D.C. 2010) (internal quotation marks omitted).

Here, the outrageous behavior that Plaintiff claims caused her emotional distress consists entirely of Defendant's allegedly discriminatory and retaliatory actions. Emotional distress injuries

resulting from Plaintiff's discrimination and retaliation claims are subsumed within those claims. *Jackson v. Am. Chem. Soc.*, 812 F. Supp. 239, 243 (D.D.C. 1993) ("Courts in this jurisdiction have held in similar cases that dismissal of the intentional tort claim is warranted because the conduct and the injury complained of are subsumed" within the plaintiffs' claims for discrimination.); *see also Green v. Am. Broad. Co., Inc.*, 647 F. Supp. 1359, 1363 (D.D.C. 1986) ("To the extent that plaintiff's [emotional distress] claim results from a stressful work situation created by defendants' alleged acts of discrimination, it is subsumed within her discrimination claim."); *Johnson v. Mao*, 174 F. Supp. 3d 500, 522-23 (D.D.C. 2016) (dismissing claim for intentional infliction of emotion distress because the claim "clearly derives from [the plaintiff's] discrimination allegations").

Plaintiff's tort claim for intentional infliction of emotional distress derives completely from her claims for discrimination and retaliation. *See* TAC, ECF No. 96-1, ¶ 354 ("Plaintiff … has suffered the maximum emotional and mental distress … because of her unemployment, humiliation on the job and harassment, hostile abusive work environment and disparate treatment."). In her Response, Plaintiff seems to admit as much stating that her intentional infliction of emotional distress claim "result[s] from employment discrimination." Pl.'s Reply, ECF No. 100, 39.

Accordingly, the Court finds that Plaintiff's Count 11 claim for intentional infliction of emotional distress, insofar as that claim relies on her termination and other alleged acts of discrimination, is futile as it is subsumed by her claims for discrimination and retaliation. The Court **DENIES** Plaintiff's Motion to Amend Count 11.

### G. Futility of FLSA Claim

Finally, Defendant contends that Plaintiff's overtime wage claim is futile because her allegations lack specificity. Under the FLSA, no employer shall employ an employee for longer

than 40 hours a week unless the employee receives additional compensation for that work. 29 U.S.C. § 207(a)(1). To proceed with a claim for overtime wages under the FLSA, a Plaintiff "must allege with some specificity that [she] worked overtime and did not receive compensation." *Akinside v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 42 (D.D.C. 2016) (internal quotation marks omitted). Here, Plaintiff has alleged that her regular work hours were 8:30 a.m. to 4:30 p.m., five days a week. TAC, ECF No. 96-1, ¶ 359. Plaintiff further alleges that from April 2016 to October 2017, she was "periodically" forced to work from 8:00 a.m. until 6:00 p.m. or 8:00 p.m. *Id.* at ¶ 361. Plaintiff argues that, despite leaving work later than 4:30 p.m., the time clock would continue to read 4:30 p.m. so that her overtime hours were not calculated. *Id.*

The Court concludes that these allegations do not provide the level of specificity required to state a claim under the FLSA. Plaintiff does no more than make conclusory allegations which "merely recite the statutory language." *Akinside*, 216 F. supp. 3d at 42 (internal quotation marks omitted). The closest that Plaintiff comes to supporting her claim with any level of specificity is her allegation that "Plaintiff estimate [sic] that she has worked more than 40 hours which are not recorded by the time clock." TAC, ECF No. 96-1, ¶ 363. But, this statement is inartfully worded and ambiguous. It not clear to the Court whether Plaintiff is making the conclusory allegation that she worked more than 40 hours within one unspecified week or whether Plaintiff is alleging that she worked a total of more than 40 hours of overtime between April 2016 and October 2017. With only the allegation that Plaintiff worked from 8:30 a.m. to either 6:00 p.m. or 8:00 p.m. "periodically" during an 18-month period, the Court is not prepared to say that Plaintiff's FLSA claim is plausible. *Compare with Galloway v. Chugach Gov. Servs., Inc.*, 199 F. Supp. 3d 145, 150 (D.D.C. 2016) (finding the complaint sufficient where the plaintiff provided three different circumstances giving rise to overtime hours and made an effort to quantify the violations); *Lincoln-*

*Odumu v. Med. Faculty Assoc., Inc.*, No. 15-1306, 2016 WL 6427645, at *12 (D.D.C. July 8, 2016) (finding the complaint sufficient where the plaintiff identified six specific weeks during which she worked overtime hours); *Freeman v. MedStar Health Inc.*, 87 F. Supp. 3d 249, 257-58 (D.D.C. 2015) (finding the complaint sufficient where the plaintiff alleged that the violations occurred numerous times, with unpaid overtime work occurring during between 50% and 100% of meal breaks).

Because Plaintiff failed to support her FLSA claim with any specific factual allegations, the Court concludes that Plaintiff's FLSA claim is futile and **DENIES** her Motion to Amend Count 12.

## IV. CONCLUSION

Based on the above analysis, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Amend. The Court GRANTS Plaintiff's Motion to Amend as to:

- Count 1 (DCHRA) insofar as that claim relies on Plaintiff's May 2015 termination for retaliation;
- Count 6 (DCHRA) insofar as that claim relies on Plaintiff's October 2017 termination for race discrimination and retaliation;
- Count 7 (42 U.S.C. § 1981) insofar as that claim relies on Plaintiff's October 2017 termination for race discrimination and retaliation; and
- Count 8 (Title VII) insofar as that claim states a hostile work environment claim.

The Court DENIES as futile Plaintiff's Motion to Amend as to:

- Count 1 (DCHRA) insofar as that claim relies on Plaintiff's May 2015 termination for race discrimination;
- Count 2 (42 U.S.C. § 1981) insofar as that claim relies on Plaintiff's May 2015 termination for race discrimination;
- Count 5 for negligent termination;
- Count 9 for breach of contract resulting from Plaintiff's October 2017 termination;
- Count 10 for breach of implied covenant of good faith and fair dealing for Plaintiff's October 2017 termination;
- Count 11 for intentional infliction of emotional distress; and
- Count 12 for overtime wages under the FLSA.

The Court also DISMISSES for failure to state a claim:

- Count 3 for breach of contract resulting from Plaintiff's May 2015 termination; and
- Count 4 for breach of implied covenant of good faith and fair dealing for Plaintiff's May 2015 termination.

Accordingly, Plaintiff may proceed with only the following claims:

- Count 1- DCHRA claim for retaliation resulting from Plaintiff's May 2015 termination;
- Count 2- 42 U.S.C. § 1981 claim for retaliation resulting from Plaintiff's May 2015 termination;
- Count 6- DCHRA claim for race discrimination and retaliation resulting from Plaintiff's October 2017 termination;
- Count 7- 42 U.S.C. § 1981 claim for race discrimination and retaliation resulting from Plaintiff's October 2017 termination; and
- Count 8- Title VII claim for hostile work environment.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge